Mae CULBERTSON; Ladette Armstrong, individually and as guardian ad litem for Tyler Armstrong; Marsha Hall, individually and as guardian ad litem for Matthew Hall; Mary Tommila, individually and as guardian ad litem for Jacinda Tommila And Keaira Tommila; Child Evangelism Fellowship of Oregon, an Oregon non-profit corporation, Plaintiffs–Appellees,

v.

OAKRIDGE SCHOOL DISTRICT NO. 76; Larry Horton, in his official capacity as Superintendent; Michael Keown, in his official capacity as former Superintendent; Michael Lambert, in his official capacity as former Principal of Oakridge Elementary School; Jane McAlvage, in her official capacity as Principal of Oakridge Elementary School; Don Crist; Curtis Dornath; Pam Moody, Susan Obermeyer; and John Whettle, in their official capacities as directors of the Oakridge School District No. 76, Defendants–Appellants.

---

No. 99–35165.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 2000

Submission Withdrawn Aug. 22, 2000

Submitted July 27, 2001

Filed Aug. 7, 2001

Lisa E. Lear, John R. Osburn, and Chrys A. Martin, Bullivant Houser Bailey, Portland, Oregon, for appellants Oakridge School District et al.

Gregory S. Baylor, Western Center for Law & Religious Freedom, Annandale, Virginia; Herbert G. Grey, Western Center for Law & Religious Freedom, Beaverton, Oregon; Darren C. Walker, Western Center for Law & Religious Freedom, Vancouver, Washington, for appellees Mae Culbertson et al.

Susan J. Veis, Los Angeles, CA, for amicus curiae Anti–Defamation League.

Before: NOONAN, GRABER, and FISHER, Circuit Judges.

NOONAN, Circuit Judge:

Oakridge School District No. 76 and individual school authorities in their official capacities (collectively the District) appeal the judgment of the district court in favor of Mae Culbertson, certain parents, and the Child Evangelism Fellowship of Oregon (collectively CEF). The district court

entered a permanent injunction requiring the District to provide the plaintiffs the same access to school facilities as the District affords other non-school community groups. Holding that the District created a limited public forum to which it may not deny access on the basis of religious viewpoint and content and that use of an elementary school building after hours does not constitute an establishment of religion, we affirm the judgment, but modify it to the extent that it requires teachers to distribute parental permission slips.

## FACTS

The District has adopted a policy for use of school facilities that provides as follows:

> It is the opinion of the Board that the school district buildings shall be considered a community center. With this philosophy in mind, the Board encourages the use of school buildings for community use, for educational and recreational purposes. The use of buildings may be available on a no cost basis for non-profit community activities.

This policy is in conformity with state statutes permitting the use of school property "for civic purposes not inconsistent with its primary use," Or.Rev.Stat. § 330.430 and defining such purposes to include "discussion of all subjects and questions which in the judgment of the residents may relate to the educational, political, economic, artistic and moral interests of the residents, giving equal rights and privileges to all religious denominations." Or.Rev.Stat. § 332.172.

Oakridge Elementary School is a school under the District that educates children from kindergarten through grade 3. Pursuant to its policy, the District opened the school after school hours for use by the Boy Scouts, Girl Scouts, Cub Scouts, 4–H, the Birth–to–Three program, and the Upper Willamette Youth sports program. CEF also applied as sponsor of a Good News Club that desired to use the school after school hours on a weekly basis to teach children whose parents gave them permission to attend.

A Good News Club sponsored by CEF is described in its literature as "a home Bible class for children between the ages of 4 and 12," where Bible verses are memorized, Bible lessons and stories of missionaries are given, hymns are taught, and spiritual growth and service are encouraged. Teachers at a Good News Club are required to be born-again Christians, able to sign without reservation the Child Evangelism Fellowship Statement of Faith.

The District initially granted the Good News Club access, and it met on October 3, 10, and 17, 1995 in the speech classroom at the school after hours, attracting not only children from the school but home-schooled children and children whose ages were above the elementary school level. Access to the school, however, was withdrawn when counsel for the District issued an opinion that such use was prohibited "by both the United States and Oregon Constitutions."

## PROCEEDINGS

On August 22, 1996, CEF began this suit in the district court, asserting that the District had violated rights of free speech and free exercise of religion under both the federal and state constitutions and seeking both a preliminary and permanent injunction. After a hearing the district court issued a preliminary injunction in favor of CEF forbidding the District to differentiate against CEF in allowing after-hours access to community groups. On appeal, we held that "the order imposes no obligation that requires the school district to infringe on the guarantees of the Establishment Clause" and affirmed the order.

Both sides then submitted affidavits and offered testimony. The plaintiffs moved for partial summary judgment and for a permanent injunction. On January 5, 1999, the district court entered the permanent injunction ordering the District to "provide plaintiffs the same access to school facilities as is afforded to other non-school community groups without regard to the religious content of their proposed activities or their religious character." The injunction also directed that students at the school be permitted to distribute club brochures and parental permission slips to other students at school, subject to reasonable regulation to prevent disruption of the educational process. The order further specified that "with respect to school dissemination of documents pertaining to community groups, defendants by policy and practice shall treat Good News permission slips in the same manner as the materials of other non-school community groups."

The District appeals.

## ANALYSIS

▮ The Forum. The school building is not a traditional public forum. The District, however, has provided that its school buildings should function as "community centers." In that capacity they are to be available for nonprofit community activities, one of which is explicitly designated as "educational." The particular activities already permitted in the building illustrate the policy but do not define the policy's parameters: they are established as community education and recreation. The District was not obliged to create such a forum. Having created this public space, however, the District cannot discriminate within it on the basis of viewpoint. *See Good News Club v. Milford Cent. Sch.,* — U.S. ——, ——, 121 S.Ct. 2093, 2100, 150 L.Ed.2d 151 (2001) (hereafter referred to as *Milford* ).

The Restriction of Free Speech in the Forum. It is beyond dispute that the Good News Club is an enterprise of members of the community and that its purpose is educational. The District banned the club not because it was lacking in community interest or in educational purpose, but because the education provided was religious. The District thereby closed a limited public forum to a group entitled to speak within it and violated the right to freedom of speech guaranteed by the First Amendment. *See id.* at 2100–01.

On appeal, the District meets the charge that it suppressed speech by answering that the plaintiffs "are not like the other groups that have used the facilities. The Record demonstrates that Plaintiffs' purpose is to teach religion and the Bible." This answer admits that the plaintiffs' purpose is educational. This answer distinguishes the plaintiffs' educational purpose by the viewpoint and content of the education offered. The answer does not merely concede that religious education is treated differently but insists that religious education cannot be permitted. The answer merges with the main defense offered by the District, that to let the Good News Club use the speech classroom after school is to establish a religion.

*The Establishment Defense.* The District observes that students have been assembled in the school building during school hours by the compulsory school attendance law. In that sense, state compulsion has produced at least part of the potential attendees at the club. But the compulsion has ended at 2:30 p.m. The children, if they and their parents choose, get on school buses and leave. The children, if they and their parents choose, engage in an athletic program. No state actor compels attendance at the club. *See id.* at 2104.

The District argues that, by permitting the club to use the speech classroom shortly after school is out for the day, the District will convey to children of tender years a message—the message that the District likes the Good News Club. This message, the District maintains, is a kind of government endorsement of religion. In so arguing, the District looks at the implicit message from the point of view of the reasonable child of tender years.

However, the Supreme Court has suggested that a different perspective must be adopted when the issue is whether a community educational group is eligible to use community facilities made available for community educational purposes. In such circumstances, as are those presented here, the issue is framed as to whether a reasonable adult would see an endorsement of religion in letting a community religious group use the facilities. A negative answer to this question has been already indicated by *Milford,* —— U.S. at ——, 121 S.Ct. at 2104.

The District attempts to distinguish *Milford* in two ways. It points out that the children here are younger, and it points out that the religious meetings begin closer to the end of the regular school day. In view of the Supreme Court's reasoning, however, we are unable to attach legal significance to those factual differences. *See id.* at 2103 n. 5, 2104.

 *Permission Slips.* The injunction not only permits students at the school to distribute the club's brochure and parental permission slips, but requires the District to treat the permission slips in the same way the District disseminates the materials of other non-school groups. The District contends that this requirement will put the authority of teachers behind the club and that it will appear that the teachers approve attendance at its meetings.

Parental permission is important insulation against establishment concerns. The requirement that teachers distribute the slips, however, goes beyond opening access to a limited public forum. It puts the teachers at the service of the club. Not just an empty classroom but a teacher's nod of encouragement is thereby afforded the club's religious program. The line between benevolent neutrality and endorsement is fine. Here it is overstepped. The injunction should be modified to eliminate the requirement.

AFFIRMED as modified and REMANDED.