**Steve RUSK, et al., Plaintiffs,**

v.

**CRESTVIEW LOCAL SCHOOLS, et al., Defendants.**

**No. 3:01 CV 7239.**

United States District Court, N.D. Ohio, Western Division.

Aug. 7, 2002.

Jillian S. Davis, American Civil Liberties Union of Ohio, Cleveland, OH, Raymond V. Vasvari, Jr., American Civil Liberties Union of Ohio, Cleveland, OH, for plaintiffs.

David K. Smith, Britton McGown Smith Peters & Kalail, Cleveland, OH, for defendants.

David R. Langdon, Cincinnati, OH, for Character Training Institute, movant.

## ORDER

CARR, District Judge.

Plaintiff Steve Rusk and his sons, plaintiffs Daniel and David Rusk ("Danny" and "David"), bring this action claiming a violation of the Establishment Clause of the First Amendment to the United States Constitution as incorporated against the states by the Fourteenth Amendment to the Constitution. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Pending are cross motions for summary judgment For the following reasons, plaintiffs' motion for summary judgment shall be granted in part, and defendants' motion shall be denied.

## BACKGROUND

Defendants Crestview School District and its Board have a policy permitting non-profit community groups that service children to submit flyers to Crestview Elementary School for teachers subsequently to distribute to the students. Organizations advertising in this way include Little League, the 4–H club, the American Red Cross, and the YMCA. Religious groups may submit flyers on the premise that those leaflets, like the advertisements from other community organizations, publicize specific community activities and do not promote the benefits of their religion. The school principal, Kathy Mollenkopf, scrutinizes all flyers to ensure that they come from non-profit groups and that they do not overtly advocate or entice support for any religious organization.

After Ms. Mollenkopf reviews the flyers, she makes them available to the teachers, who place them in the students' homeroom mailboxes. The children retrieve material from their mailboxes at the end of the school day. While defendants assert that the students may discard the flyers immediately if they wish, neither party makes clear whether the children receive other documents in their mailboxes, such as grade cards or notices for parent-teacher conferences, that they are expected to take home or otherwise keep.

Danny Rusk has attended Crestview Elementary School since the 1997–98 school year when he was in the third grade. Danny was in the seventh grade during the most recent school year. His younger brother David, a first-grader last school-year, currently attends elementary school. The record does not specify the exact grade levels which comprise the elementary facility, however, it is likely that the children attending the school, and therefore receiving flyers pursuant to Crestview's policy, are between the ages of five and twelve.

When Danny was at Crestview Elementary, he occasionally brought home flyers sponsored by religious organizations and publicizing religious activities. David continues to bring home similar advertisements. Their father, plaintiff Steve Rusk believes that the distribution of material containing religious content unconstitutionally facilitates the indoctrination of religion in his children's public elementary school. The record contains two examples of flyers which Rusk finds inappropriate. Neither uses proselytizing language, yet both advertise events at Christian churches that feature religious activities such as Christian fellowship, Bible stories, and "songs

that celebrate God's love." Doc. 30 Ex. A at Ex. 2 –3.

In their motion for summary judgment, plaintiffs ask that the school be precluded from issuing "religious material" to elementary school students through the school staff. Doc. 33 at 12. Defendants contend that they have a right to distribute flyers from non-profit community groups, including those that are "religiously-oriented," to elementary school students. In their motion for summary judgment, they ask to be permitted to do so. Doc. 28 at 9.

## STANDARD OF REVIEW

The district court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that U.S. party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the court will assume the truth of the evidence of the non-moving party, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs. Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c).

## DISCUSSION

Historically, the three-prong test articulated in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) has been a starting point for analyzing the validity of a challenge to governmental activity under the Establishment Clause. The *Lemon* test asks whether a statute, practice, or policy (1) has a legitimate secular purpose; (2) has a primary effect of advancing or inhibiting religion; and (3) fosters an excessive entanglement between government and religion. *Id.* at 612–613, 91 S.Ct. 2105.

The *Lemon* test has attracted criticism due to the lack of explicit language and confusion in applying it to specific scenarios. *See, e.g., Board of Educ. v. Grumet,* 512 U.S. 687, 719, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (noting that "[a]ny test that must deal with widely disparate situations risks being so vague as to be useless," and that "*Lemon* has, with some justification, been criticized on this score").

Despite this criticism and proposals that a new test replace it, however, *Lemon* endures. *See Doe by Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 302 (5th Cir.1999) (citations omitted).

In response to the questions raised about *Lemon*, the Supreme Court has, and Justices O'Connor and Kennedy in particular have, proposed two methods of Establishment Clause analysis that "sharpen the focus that *Lemon* mandates": the endorsement and coercion tests. *Smith v. Lindstrom*, 699 F.Supp. 549, 554 (W.D.Va.1988) (referring specifically to the endorsement test). Justice Kennedy formulated the coercion test in *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), and Justice O'Connor articulated the endorsement test in her concurrence in *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). Support exists for both alternatives. *Doe*, 173 F.3d at 302. Therefore, particularly in the context of public education, courts rely on one or more of each of the three tests. *See Tangipahoa Parish Bd. of Educ. v. Freiler*, 530 U.S. 1251, 1252, 120 S.Ct. 2706, 147 L.Ed.2d 974 (2000) (dissenting opinion).

Dissatisfaction with the "formulaic abstractions that ... conflict with ... our long-accepted constitutional traditions" in *Lemon* led to the coercion test. *Lee*, 505 U.S. at 644, 112 S.Ct. 2649 (dissenting opinion). In *Lee*, the Supreme Court specifically declined to reconsider the decision in *Lemon*. *Id.* at 587, 112 S.Ct. 2649. However, the Court consciously departed from *Lemon*, and in doing so, expressed concern about the profound effect that Establishment Clause violations may have upon school-age children. *Id.* at 592, 112 S.Ct. 2649. The Court found that, due to the young age and impressionability of elementary and high school students, even subtle pressure either to participate, or maintain a respectful silence, as opposed to remaining apart while others participate in a religious activity, has a coercive effect, and thus violates the Constitution. *Id.* Writing for the Court, Justice Kennedy expressed this view:

> We do not address whether that choice is acceptable if the affected citizens are mature adults, but we think the State may not, consistent with the Establishment Clause, place primary and secondary school children in this position. Research in psychology supports the common assumption that adolescents are often susceptible to pressure from their peers towards conformity, and that the influence is strongest in matters of social convention. ... To recognize that the choice imposed by the State constitutes an unacceptable constraint only acknowledges that the government may no more use social pressure to enforce orthodoxy than it may use more direct means.

505 U.S. at 593–594, 112 S.Ct. 2649 (citations omitted).

Defining the endorsement test, Justice O'Connor further developed the second and third prongs of the *Lemon* test. According to Justice O'Connor, "[f]ocusing on institutional entanglement and on endorsement or disapproval of religion clarifies the *Lemon* test as an analytical device." *Lynch* 465 U.S. at 689, 104 S.Ct. 1355. When government activity "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community," that activity constitutes impermissible endorsement of religion. *Id.* at 688, 104 S.Ct. 1355.

Furthermore, the perception of an endorsement of religion can be enough to determine that an activity fails the endorsement test. When actions by the state convey a message of endorsement,

even if unintended, the state violates the Establishment Clause. As the dissent noted in *Peck v. Upshur County,* "[t]he Establishment Clause forbids a State from hiding behind the application of formally neutral criteria and remaining studiously oblivious to the effects of its actions." *Peck v. Upshur County,* 155 F.3d 274, 296 (4th Cir.1998) (dissenting opinion) (citing *Capitol Square Review and Advisory Bd. v. Pinette,* 515 U.S. 753, 777, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995)).

Through the articulation of the endorsement and coercion tests, the Court acknowledged that the age and psychological development of children affects how they the perceive the actions taken or beliefs espoused by their teachers and how they respond to the pressure to conform to certain behavior. Thus, when a challenge under the Establishment Clause concerns elementary school children, the court should consider the age of the children affected by the disputed act when determining the constitutionality of the practice. *See, e.g., Lee,* 505 U.S. at 592, 112 S.Ct. 2649; *School Dist. of Grand Rapids v. Ball,* 473 U.S. 373, 390, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985); *Edwards v. Aguillard,* 482 U.S. 578, 583–584, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987).

Plaintiffs accurately indicate that the Sixth Circuit considers the *Lemon* test to be the most appropriate tool to resolve Establishment Clause cases. Doc. 33 at 7. This circuit incorporates the endorsement test into the analysis as well. In explicating the second prong of *Lemon,* (i.e. whether the activity in question advances or inhibits religion) the Sixth Circuit determines "whether the challenged governmental practice or statute endorses religion." *Hawley v. City of Cleveland* ("*Hawley II*"), 24 F.3d 814, 822 (6th Cir. 1994) (citations omitted).

Examining the facts in the record through the lens of the appropriate tests leads to the conclusion that defendants' actions fail to pass constitutional muster. Even construing the facts in the light most favorable to defendants, due to the young age of the children affected by the policy, the practice of distributing religious material to students could be construed as an endorsement of religion by the school or the teachers.

The disputed behavior satisfies the first prong of the *Lemon* test; the distribution of flyers from community non-profit organizations does serve a legitimate secular purpose. I agree with defendants that the purpose of defendants' policy is to advertise community activities designed to appeal to children. No evidence in the record disputes defendants' assertion that all non-profit, community based organizations that offer services to children have the opportunity to submit flyers, and the goal of the school is to notify the students that these opportunities are available to them.

Similarly, the action fulfills the requirements of *Lemon's* third prong in that it does not foster an excessive entanglement between church and state. I agree with defendants that by acting as a venue through which organizations, religious and non-religious alike, may advertise children's activities directly to the age-group to which they are meant to appeal, the school does not establish an inappropriate relationship with a religious institution.

Defendants' practice, however, cannot pass the second prong of *Lemon* as interpreted by the Sixth Circuit. To pass constitutional muster, defendants must show that their practice neither advances nor inhibits religion, and that the school does not endorse religion in general, or belief in a particular religion through its practice. *Hawley II,* 24 F.3d at 822. Given the youth of the children who are the targets of the flyers, as well as the their inability to distinguish between endorsement and

neutrality when given something from their teachers, I agree with the plaintiffs that the distribution of flyers advertising religious activities violates the second prong of *Lemon* and the endorsement test.

Defendants rely on the neutrality of the school policy to reinforce their argument that the school neither advances nor inhibits religion. They maintain that the school principal carefully scrutinizes each flyer submitted for distribution "to ensure that it is not advocating or 'touting' the benefits of any particular religion," and that flyers that do not meet the standard of neutrality do not reach the students' mailboxes. Doc. 36 at 3. To a certain extent, she succeeds. The flyers in the record themselves neither proselytize nor "tout" the benefits of being Christian over any other religion or lack thereof. Even so, while the flyers may be relatively neutral, the activities they reference are overtly religious in nature. Because young children may not be able to differentiate between an activity advertised and a neutral position taken toward that activity, the danger that the children will perceive endorsement of religion exists. In this respect, Crestview's policy exceeds the bounds of neutrality, and thus fails the endorsement test.

Defendants correctly assert that the court in *Daugherty v. Vanguard Charter Sch. Academy*, 116 F.Supp.2d 897 (W.D.Mi.2000), the only case either party cites that precisely addresses the issue of flyer distribution by community organizations in a public elementary school, upheld the school's practice. In *Daugherty*, the court addressed several of the school's policies, including the distribution of material, some of which the court described as "religious," into "Friday folders." The court in *Daugherty* relied upon the reasoning in *Peck v. Upshur County Bd. of Education*, 155 F.3d 274 (4th Cir.1998) to deny summary judgment to plaintiffs with respect to

the practice and determine that it did not violate the First Amendment.

As plaintiffs demonstrate, however, the Fourth Circuit did not intend the reasoning cited by the *Daugherty* court to apply to elementary school students. The Fourth Circuit held that while making religious material, specifically Bibles, available to secondary school students under the *Upshur County* schools' policy, did not violate the Constitution, the same activity violates the Constitution if undertaken in elementary schools. *Peck*, 155 F.3d at 287–288. With respect to elementary schools, the court held, "because [elementary school children] may be unable to fully recognize and appreciate the difference between government and private speech—a difference that lies at the heart of the neutrality principle—the County's policy could more easily be (mis)perceived as endorsement rather than neutrality." *Peck*, 155 F.3d at 288.

As the district court noted in *Sherman v. Community Consol. Sch. Dist. 21*, 1993 WL 57522, 1993 U.S.Dist. LEXIS 2617 (N.D.Ill.1993), *aff'd* by 8 F.3d 1160 (7th Cir.1993), "[t]he diversity of religious beliefs held by students in our public schools guarantees that at least some students will be exposed to something that offends their scruples and contradicts their principles, [but the] Constitution provides no shelter against this type of offense." *Id.*, 1993 WL 57522 *7, 1993 U.S.Dist. LEXIS 2617 *14. The court in *Sherman* upheld an elementary school's policy allowing non-profit community organizations to distribute literature and display posters advertising youth-oriented activities, but that case, like *Daugherty*, is distinguishable from this.

The plaintiffs in Sherman, an atheist father whose son was denied acceptance into the Boy Scouts because they could not subscribe to the Scouts' religious creed,

challenged the school's policy permitting the Scouts to use their facilities after school hours. Plaintiffs claimed that the school improperly endorsed Christianity as practiced by the Scouts by allowing them access to the building.

The court rejected plaintiffs' arguments, and in doing so, surmised that if endorsement of religion by the school took place, it lay "in the District's practice of displaying Boy Scout posters at school entrances and distributing Scout information in classrooms." *Id.*, 1993 WL 57522 *5, 1993 U.S.Dist. LEXIS 2617 *14–*15. Children receiving the material might perceive the school to be endorsing the religious views of the Boy Scouts. The court found the link between the Boy Scouts' advertising and the perception that the school endorsed its religious views to be too attenuated to constitute a Constitutional violation because not only did the material posted and distributed contain no religious message whatsoever, but the activities advertised by the literature (Scout events) were "not overtly religious, involvement by the school officials is minimal, and students are not directly or indirectly compelled to participate in any religious exercise." *Id.*, 1993 WL 57522 *5, 1993 U.S.Dist. LEXIS 2617 *2.

By contrast, the flyers that Steve Rusk has submitted urge attendance at events that clearly involve an element of proselytizing. The message conveyed, while neutral in tone, contains religious content. Students are not compelled to participate, but those who do will take part in an activity that certainly can be described as "overtly religious". Given the religious overtones of the activity, the age of the target audience and the heightened possibility that due to their youth the children may not be able to appreciate the neutral stance that the school claims to take with regard to these activities, the practice of distributing these materials to elementary school students fails to pass the endorsement test.

Defendants also claim that prohibiting religious organizations from advertising activities—including religious activities— itself violates the Establishment Clause because to do so would inhibit religion. They also claim that by allowing some community groups access to the school, to prohibit religious organizations from advertising based on their content and viewpoint breaches the free speech clause of the First Amendment. Plaintiffs concede that "[t]he body of United States Supreme Court jurisprudence ... stands for the proposition that once a school opens its facilities to outside groups, it may not discriminate based on the viewpoint that the group espouses." Doc. 36 at 5 (citing *Good News Club v. Milford Central School*, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001); *Board of Educ. of Westside Comty. Schs. v. Mergens By and Through Mergens*, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990); *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981)).

Forbidding religious organizations from advertising activities at which proselytization will occur in an elementary school does not equate to denying access to an organization based on its viewpoint. This decision does not require that Crestview refuse to distribute every advertisement that comes from a religious organization. Advertisements promoting a food drive sponsored by a local church or temple to benefit the poor of the community, or even a youth sports league, for example, would pass the constitutionality tests as I interpret them.

Religious organizations are free to advertise any activities that do not include a proselytizing element within public elementary schools; such schools are not, however, an appropriate forum for adver-

tising overtly religious and sectarian activities. Especially considering the youth and impressionability of primary school children, such advertising violates the Establishment Clause.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

1. Defendants' motion for summary judgment be, and hereby is, denied; and

2. Plaintiffs' motion for summary judgment be, and hereby is, granted in part; and

3. Defendants, and each of them, and all persons acting under their supervision and control, or in concert with them in the performance of duties and activities as members or employees of Crestview Local Schools, be, and the same hereby are permanently enjoined from distributing flyers or similar notices that advertise religious activities.

**So ordered.**