| June 2000 through Nov. 2000 | Base benefit SS benefit Net monthly ERISA benefit | $4,950.01 − 1,559.00 $3,391.01 | x 6 months = | $20,346.06 |
|---|---|---|---|---|
| Dec. 2000 | Base benefit SS benefit Net monthly ERISA benefit | $4,950.01 − 1,613.00 $3,337.01 | x 1 month = | $ 3,337.01 |
| Jan. 2001 through March 17, 2002 | Base benefit SS benefit Net monthly ERISA benefit | $4,950.01 − 1,641.00 $3,309.01 | x 14.5 months = Total = | $47,980.65 $71,663.72 |

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. # 22] is granted and defendant's motion for summary judgment [Doc. # 22] is denied.

### *JUDGMENT*

Pursuant to the order entered herein this day,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that summary judgment is entered in favor of plaintiff and against defendant in the amount of $71,663.72, plus costs and such post-judgment interest as is allowed by law.

Barbara **WIGG**, Plaintiff,

v.

**SIOUX FALLS SCHOOL DISTRICT 49–5; and Dr. Jack Keegan, in his individual and official capacity as Superintendent of the Sioux Falls School District, Defendants.**

No. CIV 03–4034.

United States District Court,
D. South Dakota,
Southern Division.

April 23, 2003.

968

Doug E. Hoffman, Myers, Peters, Hoffman & Billion, Sioux Falls, SD, Mathew D. Staver, Joel L. Oster, Rena M. Lindevaldsen, Liberty Counsel, Longwood, FL, for Plaintiff.

Michael L. Luce, Susan Brunick Simons, Sandra K. Hoglund, Dana Van Beek Palmer, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Pending before the Court is Plaintiff's Motion for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages, Doc. 2. The Plaintiff submitted a memorandum of law in support of her motion, and the Defendants submitted a brief in response. The Court held a hearing on the motion on March 14, 2003. At the conclusion of the hearing, the Court denied the Plaintiff's motion for a preliminary injunction with respect to attending the Good New Club at Laura B. Anderson Elementary School ("Anderson Elementary"), the school at which the Plaintiff teaches. The Defendants requested an opportunity to submit supplemental briefing regarding the Plaintiff's request to attend the Good News Club meetings at Sioux Falls Elementary Schools other than Anderson Elementary. The Court granted that request and both parties have now submitted supplemental briefs on that issue. For the reasons stated below, the Plaintiff's request for a preliminary injunction is denied. The Plaintiff's request for declaratory relief and a permanent injunc-

tion will be ruled on after a full trial on the merits.

## BACKGROUND

Plaintiff Barbara Wigg is a second and third grade teacher at the Laura B. Anderson Elementary School in the Sioux Falls School District. She has been employed by the Sioux Falls School District ("District") since 1988 and has been assigned to five different elementary schools during her tenure with the District. The record, however, fails to establish the four other schools within the District at which the Plaintiff has worked. According to the affidavit of Mary Peterson, principal at Anderson Elementary, the teachers at Anderson Elementary agreed to maintain regular scheduled hours from 7:30 a.m. to 3:30 p.m. each school day, although many teachers work more than this minimum schedule. *See* Peterson Aff. at ¶ 3, Doc. 17. Peterson indicates that the Plaintiff herself frequently arrives earlier than 7:30 a.m. and stays at school beyond 3:30 p.m. to work on school-related matters. *See id.*

The District has chosen to permit access to its buildings to various organizations in order to foster community involvement. The groups range from school-sponsored to student-initiated as well as community organizations. The Good News Club is one such group. The Good News Club requested access to the school's facilities for its meetings in October 2002. The Good News Club was granted access to School District facilities, and currently meets at five elementary schools in the District, including Anderson Elementary. The group meets at Anderson Elementary Mondays from 3:00 to 4:00 p.m. after school has dismissed at 2:45 p.m. The record contains no evidence as to which other four elementary schools within the District also have the Good News Club meeting at their facilities. The record is likewise bare of any evidence with respect to the time that Good News Club meetings are held at these other schools.

The Good News Club is an after-school club sponsored by Child Evangelism Fellowship, where children are taught morals and character development from a religious perspective. According to its literature, the purpose of the club is to "evangelize boys and girls with the Gospel of the Lord Jesus Christ and establish (disciple) them in the Word of God and in the local church for Christian living." *See* Keegan Aff., Ex. 3, Doc. 16.

The Plaintiff desires to participate in the Good News Club meetings that transpire at District facilities. The Good News Club first meet at Anderson Elementary on December 16, 2002 in the Anderson Elementary library. According to Principal Peterson, many of the Anderson Elementary children attending the Good News Club meetings are second and third-grade students at Anderson Elementary, many of whom are in the Plaintiff's class. *See* Peterson Aff. at ¶ 11, Doc. 17. Prior to the first meeting of the group, the Plaintiff approached Principal Peterson and informed her that she had volunteered to teach the class for the Good News Club at Anderson Elementary. The Plaintiff did participate in the first Good News Club meeting. After her participation, the Plaintiff was informed by Principal Peterson that she could no longer take part in Good News Club meetings held on school property because of the District's concern that her participation in the group might be perceived as an establishment of religion. Since that time, Plaintiff has not participated in any Good News Club meetings within the District.

Principal Peterson states in her affidavit that teachers, students and other groups are routinely present in the school during non-instructional hours and may be present in and/or pass through the Anderson

Elementary library during this time. *See* Peterson Aff. at ¶ 6, Doc. 17. She further states that young children whose parents would not have seen the Good News Club's permission slip are present in the building during the time the group meets and could witness the meetings. *See id.* at ¶ 15.

On January 16, 2003, the Plaintiff sent a letter to the superintendent for the District Dr. John Keegan requesting that she be allowed to participate in the Good News Club. In her letter the Plaintiff informed the District that, in order to address the Establishment Clause concerns raised by the District, the Good News Club would require each student attending the group to provide a signed permission slip that would contain the following disclaimer:

> The Good News Club is a private organization and is not affiliated with the Sioux Falls School District in any manner. If some of the participants in the Good News Club are also school district employees, then the school district employees are participating in the Good News Club on their own private time, and are not representing the school in any fashion. Nor are any school district employees "on-the-clock" while participating in the Good News Club.

*See* Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages, Ex. C, Doc. 1. The District responded to the Plaintiff's request on January 17, 2003, and stood by its earlier assessment that allowing the Plaintiff to participate in the Good News Club group at Anderson Elementary would present Establishment Clause issues for the District.

On January 28, 2003, the Plaintiff sent a second letter to the District again requesting that she be allowed to participate in Good News Club meetings. She relied upon the District's policy regarding religion in the school. In relevant part, the policy prohibits school personnel from organizing, providing leadership, or participating in student religious organizations, clubs, or functions on school grounds or at school-sponsored activities unless the organization has leased the facility in accordance with the community use policy. In her letter, the Plaintiff claimed that she should be allowed to participate in Good News Club meetings because the club leased its facilities in accordance with the community use policy.

The District sent a letter response on January 29, 2003, again denying the Plaintiff's request. In its letter the District explained that the provision of the policy referring to organizations which lease facilities was intended to cover circumstances in which the District permits a church to lease space in the event that the church is without its own facilities or in the process constructing its own facilities. The District claims that the language in the policy was included to allow District personnel to attend church services if her church were in such a situation of leasing facilities from the school. The District reiterated its position that if the Plaintiff participated in the Good News Club's meetings she would be violating school policy.

Although the District prohibits the Plaintiff from participating in religious clubs that meet on school grounds, she is allowed to participate in other groups that utilize school facilities. The Plaintiff has in fact participated in two such groups, the Girl Scouts and the Sioux Reading Council.

The District alleges that the actions of the Plaintiff have caused problems for the school in the past. In late November or early December 2002, the Plaintiff provided Bibles to two of her students. One of the students had returned a permission slip from her parent indicating that the parent did not object to the Plaintiff providing the student with a Bible. The other

student did not return the permission slip but instead informed the Plaintiff that his father desired that he read from a "Jewish" Bible. The Plaintiff then proceeded to explain to the student the differences between the old and new testaments and made a "non-Jewish" Bible available to the student. The Plaintiff did not see the student reading the Bible in class and was also unaware that the student took the Bible home, apparently without the Plaintiff's permission. As a result of the child bringing home the Bible, the child's father threatened to sue the school, although no suit was ever filed. The Plaintiff discussed the situation with the student's mother and apparently resolved the matter.

The District has a policy that requires all district employees to wear an identification/access control card while present in district facilities. The record is clear that the Plaintiff must wear her I.D. badge while present at Anderson Elementary, but it is unclear whether the District would require her to wear the badge while present in other school facilities. At the hearing on the preliminary injunction, the District represented to the Court that the Plaintiff would be allowed to wear a visitor's badge while present in a school other than Anderson Elementary. In the supplemental affidavit of District Superintendent Dr. John Keegan, Jr., filed with the District's supplemental brief, however, the District appears to rescind its earlier offer. In his supplemental affidavit, Dr. Keegan states "[f]ollowing the March 14, 2003, meeting, I have addressed the need to strictly enforce the District's policy requiring display of an identification/access control card (name badge) at all times that the staff is present in a district facility." *See* Supp. Keegan Aff. at ¶ 24, Doc. 25. This statement appears to indicate that the District reevaluated its willingness to allow the Plaintiff to wear a visitor's badge while present at another school, although whether the District has changed its position

from that which it represented on March 14, 2003, to the Court is not entirely clear.

## DISCUSSION

In deciding whether to issue a preliminary injunction, the Court considers: (1) the threat of irreparable harm to the plaintiff; (2) the state of the balance between this harm and the injury that granting the temporary restraining order will inflict on the defendant; (3) the probability of plaintiff's success on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981). In seeking this preliminary injunction, the Plaintiff bears the burden of proof and that burden is even greater in a case such as this where the relief that she is seeking will give her substantially the relief that she would obtain after a full trial on the merits. *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir.1993). The Plaintiff is not seeking that the status quo be maintained throughout the duration of this litigation, but rather is asking the Court to order affirmative change, i.e. to overturn the District's decision and allow her to participate in meetings of the Good News Club. In order to obtain a mandatory injunction requiring such action, the Plaintiff bears a heavy burden. *See Sanborn Mfg. Co.*, 997 F.2d at 486.

## I. Plaintiff Attending Good News Club Meetings at Anderson Elementary

### A. Threat of Irreparable Harm to the Plaintiff

As the Plaintiff contends, the Supreme Court has repeatedly held that "[t]he loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)(citing *New York Times*

*Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). Here, the Plaintiff is being denied her free speech rights because of the Establishment Clause concerns of her employer. This is a significant injury, and this factor weighs in favor of the Plaintiff.

## B. Balance Between the Harms

■ Although the harm that the Plaintiff is enduring absent an injunction is significant, as is the harm that the District would incur if such an injunction were granted. The Court believes that compelling the District to allow the Plaintiff to attend Good News Club meetings at Anderson Elementary would require the District to offend the Establishment Clause. Such a situation could thrust the District into yet another lawsuit and consume even more of the resources of the District. The harm on both sides of this equation is significant, but the Court finds that this factor weighs in favor of the District.

## C. Probability of Plaintiff's Success on the Merits

■ The Plaintiff contends that the District is engaging in impermissible viewpoint discrimination of speech in preventing her from participating in meetings of the Good News Club at Anderson Elementary in order to teach morals and character to students from a religious perspective when she is allowed to participate in student groups such as the Girl Scouts that teach morals and character from a secular perspective. The District argues that allowing the Plaintiff to participate in religious groups that meet on school property would violate the Establishment Clause and thus the District is obligated to refuse her request to participate. The Court finds that with respect to participating in the Good News Club at Anderson Elementary, the Plaintiff has failed to carry her burden of establishing a likelihood of success on the merits.

The Plaintiff heavily relies on the recent United States Supreme Court opinion *Good News Club v. Milford Central School,* 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001). In the *Good News Club,* the Supreme Court found that the school's refusal to allow the club to meet after hours at school facilities when the school allowed other groups to meet was unconstitutional viewpoint discrimination not justified by the Establishment Clause. As the District points out, however, the present case before this Court is not an access case. The District already allows access in that the Good News Club already is allowed to meet in the District's facilities. Therefore, *Good News Club* is not directly on point with this case.

Furthermore, the instant case contains a significant factual deviation from the facts presented to the Supreme Court in the *Good News Club.* This case involves a request by a *schoolteacher* to participate in a religious group that conducts its meetings in the very same school building in which she teaches. This fact dramatically alters the analysis for Establishment Clause purposes. The Court intimated in the *Good News Club* opinion that the situation would have been different had a schoolteacher been involved in leading the group. The Court stated "[o]bviously when individuals who are not schoolteachers are giving lessons after school to children permitted to attend only with parental consent, the concerns expressed in *Edwards* are not present." *Id.* at 117, 121 S.Ct. 2093. In *Edwards v. Aguillard,* 482 U.S. 578, 584, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) the Court was concerned that students are susceptible to pressure in the classroom, particularly given their possible reliance on teachers as role models. Although not

at issue in the *Good News Club,* that concern is at the heart of this case.

The Court in *Good News Club* further cautioned, "we have never extended our Establishment Clause jurisprudence to foreclose private religious conduct during nonschool hours merely because it takes place on school premises where elementary school children may be present." *Good News Club,* 533 U.S. at 115, 121 S.Ct. 2093. Here it is not entirely clear that the Plaintiff's conduct participating in the group can be characterized as "private" when she goes directly from teaching for the District to teaching some of the same students in the same facility for the Good News Club. Additionally, in this case, it is a virtual certainty that schoolchildren will be present and will witness the Plaintiff leading this group. Anderson Elementary is only an elementary school, not a combined elementary, junior high, and high school like the school at issue in the *Good News Club.* Thus there are more young students present. According to the principal of Anderson Elementary, these young elementary students are in fact present in the facility at the time the group meets. The fact that the students in Anderson are elementary students is significant. It has been determined that elementary students are significantly more impressionable than older students. *See* Aff. of Thomas Himler, Ph.D., Doc. 18; *see also Edwards v. Aguillard,* 482 U.S. 578, 584, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); *Bell v. Little Axe Independent Sch. Dist.,* 766 F.2d 1391, 1404 (10th Cir.1985)("Elementary school-children are vastly more impressionable than high school or university students"); *Quappe v. Endry,* 772 F.Supp. 1004 (S.D.Ohio 1991). Given these distinguishing facts, the Court finds that *Good News Club* is not controlling authority in this case.

In cases in which a school district is attempting to police itself and its employees to avoid Establishment Clause violations, the courts must afford the school some leeway. The Second Circuit Court of Appeals has recognized the difficult position that schools are thrust into in resolving tensions between the different clauses of the First Amendment. In *Marchi v. Board of Coop. Educational Servs. of Albany,* 173 F.3d 469, 476 (2d Cir., 1999), the Second Circuit wrote:

> when government endeavors to police itself and its employees in an effort to avoid transgressing Establishment Clause limits, it must be accorded some leeway, even though the conduct it forbids might not inevitably by determined to violate the Establishment Clause and the limitations it imposes might restrict an individual's conduct that might well be protected by the Free Exercise Clause if the individual were not acting as an agent of government.

*Id.* The court went on to state:

> The decisions governmental agencies make in determining when they are at risk of Establishment Clause violations are difficult, and, in dealing with their employees, they cannot be expected to resolve so precisely the inevitable tensions between the Establishment Clause and the Free Exercise Clause that they may forbid only employee conduct that, if occurring, would violate the Establishment Clause and must tolerate all employee conduct that, if prohibited as to non-employees, would violate the Free Exercise Clause. When government is both the initiator of some religiously related actions, through the conduct of its employees, and the regulator of the extent of such actions, through the conduct of its supervising employees, it need not determine, at the peril of legal liability, precisely where the line would be drawn if its employees were not involved. Though school boards, like all instru-

mentalities of government, must observe the basic free exercise rights of its employees, the scope of the employees' rights must sometimes yield to the legitimate interest of the government employer in avoiding litigation by those contending that an employee's desire to exercise his freedom of religion has propelled his employer into an Establishment Clause violation. In discharging its public functions, the governmental employer must be accorded some breathing space to regulate in this difficult context. For his part, the employee must accept that he does not retain the full extent of free exercise rights that he would enjoy as a private citizen.

*Id.* Although the *Marchi* court spoke in terms of the Free Exercise Clause, the governmental employer faces the same tensions when dealing with the Free Speech Clause in cases in which the speech at issue that could potentially be attributed to the government is of a religious nature as is the case here. Furthermore, the Supreme Court in *Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503, 507, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) stated that "the Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id.* (citing *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), *Meyer v. Nebraska,* 262 U.S. 390, 402, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). Therefore, in evaluating the merits of the Plaintiff's claim and the validity of the District's decision, the Court will pay due deference to the District's regulation of its employer-employee relationship with the Plaintiff.

The District contends that the First Amendment rights of the Plaintiff are not co-extensive with those of the general public. With respect to this assertion, the District is correct. Although it is true that teachers and students do not shed their constitutional rights at the schoolhouse gate, these rights are not absolute. *See Tinker,* 393 U.S. at 506, 89 S.Ct. 733; *see also Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). In the public school context, the free speech rights of the speaker may be curtailed if they interfere with the rights of others. *See Tinker,* 393 U.S. at 513, 89 S.Ct. 733. Here, the District contends that the Plaintiff's free speech rights must be balanced against the rights of others to be free from the government establishment of religion. In balancing these rights, the Court now turns to the Establishment Clause analysis.

In analyzing the Establishment Clause issue, the Court applies three prong test articulated in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Although the *Lemon* test has been criticized, it was recently re-affirmed by the United States Supreme Court in *Santa Fe Ind. Sch. Dist. v. Doe,* 530 U.S. 290, 314, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000). Under the *Lemon* analysis, this Court is to determine (1) whether the action at issue has a legitimate secular purpose; (2) whether it has a primary effect of advancing or inhibiting religion; and (3) whether it fosters an excessive entanglement between the government and religion. *See id.* at 612–613, 91 S.Ct. 2105. Although application of the *Lemon* test is not always easy and straightforward, it is clear in the law that what the Establishment Clause mandates is government neutrality concerning religion. *See Epperson,* 393 U.S. at 103–104, 89 S.Ct. 266.

The District argues that its refusal to allow the Plaintiff to participate in the Good News Club at Anderson Elementary has the secular purpose of seeking to remain neutral toward religion and attempting to avoid an Establishment Clause vio-

lation. The District also argues that Plaintiff's participation in the Good News Club has no secular purpose but rather the religious purpose of evangelizing to children.

In applying the first prong of the *Lemon* analysis, the Court must be mindful of the posture of the case. Here the Plaintiff has advanced a free speech claim and the District has proffered the Establishment Clause issue as a defense to her claim contending that allowing her to participate would violate the Establishment Clause. Therefore, in such a context, the Court must evaluate not whether the District's refusal to allow her to participate can satisfy the *Lemon* test but instead whether allowing her to participate in the Good News Club would fail the *Lemon* test as the District contends and thereby provide a valid defense to the Plaintiff's free speech claim.

If the school were to allow the Plaintiff to participate in the meetings of the Good News Club at Anderson Elementary, such a decision would appear to have the secular purpose, as could be claimed by the District, of allowing the Plaintiff to exercise her free speech rights. Although, the Plaintiff's purpose in teaching in the group may be to advance religion, that would not be the purpose of the District in allowing her to participate. Thus, it would seem that the District could have claimed a secular purpose in granting the Plaintiff permission to teach in the group. Others could claim, however, that the District's purpose was not secular, but rather to advance religion.

Allowing her participation, however, would fail the second prong of *Lemon* because it would have the primary effect of advancing religion. In evaluating whether a particular action violates the second prong of *Lemon*, the Court must determine whether a reasonable observer of the action would perceive it to endorse reli-

gion. *See County of Allegheny v. ACLU*, 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). Under the facts of this case, the answer to that question must be yes. Here, an observer would see a public schoolteacher go from teaching her class to teaching a religious group just down the hall from her classroom in the school's library. The observer would see that the teacher was wearing a I.D. badge identifying herself as a member of the school staff, and most likely, the observer would be a young child highly influenced by this teacher as a role model and completely incapable of distinguishing between the teacher in her capacity as a schoolteacher and the teacher in her capacity as a private individual leading a religious group on her own time after school hours. Under these circumstances, allowing the Plaintiff to participate in the Good News Club at Anderson Elementary would be reasonably perceived as an endorsement of religion. *See Culbertson v. Oakridge Sch. Dist.*, 258 F.3d 1061, 1065 (9th Cir.2001)(finding that requiring schoolteachers to distribute permission slips in class for children to attend religious group violated the Establishment Clause because it gave the impression that the school endorsed the religious activity); *see also Rusk v. Crestview Local Schools*, 220 F.Supp.2d 854, 859 (N.D.Ohio 2002)(finding that because of the danger that young children will be unable to differentiate between neutrality towards and endorsement of religion, the distribution of flyers announcing religious community events violated the Establishment Clause).

With respect to *Lemon*'s third prong regarding whether the action would excessively entangle the school in religion, it does not appear that such entanglement would be present on the current record. The Plaintiff is not requesting that the District grant her permission to complete her workday early to attend the meetings.

She is only requesting permission to attend after she has completed her school duties for the day. The District has already allowed access to the Good News Club to its facilities and arranged a time and place for the group to meet. If the District were to allow the Plaintiff to participate in such meetings, after that decision were made, the District would have no further involvement and/or entanglement with group. The District argues extensively that participation of one of their teachers with the Good News Club group would lead to the perception that the school is endorsing religion. While the Court agrees with this argument and sees the concern as a substantial one, it is better addressed above in discussion of *Lemon's* second prong.

In finding that *Good News Club* does not control in this case and that significant issues arise under the *Lemon* test with respect to whether the Plaintiff's participation in the Good News Club would be perceived as endorsement of religion by the District, the Court must conclude that the Plaintiff has failed to establish a likelihood of success on the merits of her case with regard to her participation at Anderson Elementary and this factor weighs in favor of the District. The issue which the Court raised at the March 14, 2003, hearing of the Plaintiff's participation in Good News Club meetings at other schools within the District is not before this Court on the preliminary injunction request for the reasons discussed in Section II of this opinion. According, the Court expresses no opinion on the merits of that question.

### D. Public Interest

■ As both parties contend, the public interest is paramount when Constitutional issues are implicated. Here the public interest is best served by denying the Plaintiff's request for a preliminary injunction. Although that decision curtails the Plaintiff's free speech rights, it protects the public from forcing the largest school district in the state into a situation in which it could be perceived as endorsing religion and likely violating the Establishment Clause. The public interest is served by maintaining the separation of church and state found in our Constitution and not forcing the District to cross that line.

### II. Plaintiff Attending Good News Club Meetings Schools within the Sioux Falls School District other than Laura B. Anderson Elementary

In her prayer for relief, the Plaintiff has also made a general request that this Court issue a preliminary injunction allowing her to participate in religious clubs that meet on District facilities. At the preliminary injunction hearing, the Plaintiff argued to the Court that in this request she is seeking permission to attend Good News Club meetings that occur at the other four elementary schools within the District. In its supplemental brief to the Court, the District contends that the issue of the Plaintiff attending the club's meetings at other school within the District is not ripe for review. On the basis of the current record before the Court, it appears that the District is correct. Thus the Court will deny the Plaintiff relief on this issue for purposes of the preliminary injunction but will reserve final ruling on this issue until a more complete record is developed in the case.

As the Eighth Circuit has recognized, "[t]he precise line between ripe actions and premature actions is not an easy one to draw." *See Missouri v. Cuffley*, 112 F.3d 1332, 1338 (8th Cir.1997)(citing *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). The purpose behind the ripeness doctrine is:

to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties.

*Id.* at 1337. (citations omitted). In the context of First Amendment cases, it is inappropriate for this Court to attempt to render a decision on an "amorphous and ill-defined factual record." *See id.* (quoting *Renne v. Geary,* 501 U.S. 312, 324, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991)). The current evidence before the Court with respect to the Plaintiff potentially attending Good News Club meetings at other schools is sketchy at best and certainly not sufficiently concrete to lend itself to a fact-intensive Establishment Clause analysis.

As the colloquy between the Court and defense counsel at the preliminary injunction hearing showed, on the basis of the current record, such an inquiry is largely hypothetical. The uncontradicted evidence in the record establishes that prior to instituting this litigation, the Plaintiff has never requested that she be allowed to participate in religious clubs that meet at schools other than Anderson Elementary. *See* Supp. Keegan Aff., at ¶ 2, Doc. 25. The District has not received such a request from the Plaintiff to evaluate whether it should be granted in a fact-specific situation. It is possible that at least under some circumstances the District would grant such a request from the Plaintiff thereby obviating the need for the Court to rule on the issue. In its supplemental brief to the Court, the District indicates that it has been working diligently to determine whether the Plaintiff attending Good News Club meetings at schools other than Anderson Elementary would run afoul of the Establishment Clause. Therefore, although the District has raised some

concerns about granting the Plaintiff's request if it is made, it certainly has not decided against it.

Even if the District would deny any such request by the Plaintiff, the Court is not a position to take up this issue on the current record. As the above analysis with respect to the Plaintiff participating in the Good News Club meetings at Anderson Elementary demonstrates, Establishment Clause inquires are inherently fact specific. *See Lee v. Weisman,* 505 U.S. 577, 597, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). On the issue of the Plaintiff participating in Good News Club meetings in other schools, the Court simply does not have the essential facts. The evidence establishes that the Plaintiff has taught at five different elementary schools in the District in her fifteen year tenure, but the record does not establish in which specific schools the Plaintiff has taught. *See* Supp. Aff. Keegan at ¶ 11. Furthermore, the facts show that the Good News Club meets at five different schools within the District but does not indicate at which other schools the group meets. *See* Keegan Aff. at ¶ 7 Doc. 16. Whether and when the Plaintiff has taught at any of the other schools in which the group meets could be significant facts in evaluating the Plaintiff's request to attend meetings at one of these other schools.

Furthermore, the current record fails to establish the times at which the Club meets at these other schools. The District has raised concerns about the Plaintiff requesting to leave work early to attend the Good News Club club at these other schools, but such a concern is purely hypothetical at this point where the meetings times at the other schools might not require the Plaintiff to leave work early to attend. Even if present meeting times do conflict with the Plaintiff's work hours, the parties could potentially explore a change

in meeting time to better accommodate the Plaintiff's work demands. Any entanglement the District might encounter in granting permission for the Plaintiff to leave work early to engage in a religious activity is simply speculation at this time.

The record fails to establish another critical fact in Establishment Clause analysis with respect to the other schools. It is clear that the District has a policy requiring school personnel to wear I.D. badges identifying themselves as school personnel while present in school district facilities. *See* Keegan Aff., Ex. 1, Doc. 16. In response to the Court's question at preliminary injunction hearing, the District indicated that the Plaintiff could wear a visitor's badge rather than her school I.D. if she were attending a club meeting a another school within the District. In an affidavit to the Court submitted after the hearing, however, it appears that the District may have changed its position on this issue. In his supplemental affidavit, Keegan states: "[f]ollowing the March 14, 2003, meeting, I have addressed the need to strictly enforce the District's policy requiring display of an identification/access control card (name badges) at all times that staff is present in a district facility." *See* Supp. Keegan Aff. at ¶ 24. Although it is not clear that the District is withdrawing its offer with respect to the Plaintiff wearing a visitor's badge, it appears that the District is leaning in that direction. Whether the District can withdraw such a concession made in open court will not be ruled on at this time, but whether the Plaintiff can wear a visitor's badge is an important consideration in the Establishment Clause analysis, and on the basis of the current record, it is an unknown fact.

In its supplemental brief, the District has brought up a host of other issues that could arise with respect to the Plaintiff participating in religious clubs at other schools. The District cites the mobility of students and teachers within the District as an issue potentially causing tension with the Establishment Clause. Because of this mobility, the Plaintiff is more likely to be identified as a District teacher even when in a different school because she may come in contact with others who know her from either the Plaintiff's own transfers between schools or that of the observing party. The District also raises concern about whether the Plaintiff would provide transportation to students to the school at which the religious club meeting would take place or whether she would provide rides home to the students after the meetings. Additionally, the District contends that it could be placed in the position of providing staff to supervise the religious club until the Plaintiff arrived after concluding her workday at Anderson Elementary. Given that the specific facts necessary in deciding these issues are unknown, if the Court were to address them, it would be forced to issue an advisory opinion, and that is something that this Court cannot do.

As the Second Circuit has recognized, walking the thin line between the Establishment and Free Speech Clauses is difficult for school districts when attempting to police itself and its employees. *See Marchi,* 173 F.3d at 476. *Marchi* cautions courts to afford some deference to schools decisions in resolving this inevitable tension. *Id.* The Court is mindful of the perilous position that a school district faces in this context in which any decision made could embroil the district in litigation. This Court will not question the District when it has not been given an opportunity to make a decision in the first place because the Plaintiff has failed to ask to participate in Good News Club meetings at schools other than Anderson Elementary.

IT IS ORDERED:

(1) that Plaintiff's Motion for a Preliminary Injunction allowing her to participate in the Good News Club meetings at the Laura B. Anderson Elementary School with the School District is DENIED;

(2) that Plaintiff's Motion for a Preliminary Injunction allowing her to participate in non-school sponsored religious clubs that meet on School District facilities other than Anderson Elementary is DENIED without prejudice on the basis that the current record is insufficient to place this issue before the Court for decision; and

(3) that Plaintiff's Motion for a Permanent Injunction and for a Declaratory Judgment will be held in abeyance pending a full trial on the merits of the case.