347 F.3d 436
 AMERICAN SAVINGS BANK, FSB, Plaintiff-Appellant,
v.
UBS FINANCIAL SERVICES INC., Defendant-Appellee,
v.
Eddie Lee, Jeffrey Davis, Patrick Gallaway, Christina Li, and Mari Kawawa a/k/a Mari Mizuno, Non-Party-Appellees.
 Docket No. 03-7558.
 United States Court of Appeals, Second Circuit.
 Submitted: October 20, 2003.
 Decided: October 23, 2003.
 
 Adrienne B. Koch, Esanu Katsky Korins & Siger, LLP, New York, N.Y. (Paul Alston, Alston Hunt Floyd & Ing, Honolulu, HI, on the brief), for Plaintiff-Appellant.
 Jason P. Criss (Linda C. Goldstein, on the brief), Covington & Burling, New York, NY, for Defendant-Appellee and Non-Party-Appellees.
 Before: OAKES, MESKILL, and B.D. PARKER, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 In this appeal, American Savings Bank, FSB ("ASB") seeks review of an order of the United States District Court for the Southern District of New York (Miriam G. Cedarbaum, Judge) denying its motion to enforce subpoenas served pursuant to Federal Rule of Civil Procedure 45 on former employees of UBS Financial Services Inc. (formerly known as UBS PaineWebber, Inc. and hereinafter "PaineWebber"). The subpoenas sought to require the former employees to obtain transcripts of their testimony before the Office of Thrift Supervision ("OTS"). For the reasons that follow, we dismiss this appeal and remand the case to the District Court.
 
 
 2
 * From October 1999 to June 2000, PaineWebber sold $83.5 million of specially created, complex securities to ASB, a federally chartered savings bank with its primary place of business in Hawaii. ASB is regulated by the OTS, whose regulations prohibit savings banks from buying securities that are not investment grade and liquid. 12 C.F.R. § 560.40. After ASB concluded its purchase of the securities, the OTS informed ASB that the purchase was illegal. ASB then tendered the securities back to PaineWebber, who refused to accept them. ASB then sued PaineWebber in the U.S. District Court for the District of Hawaii in February 2001, seeking, inter alia, rescission under the Hawaii Uniform Securities Act and damages for misrepresentation, breach of warranty, breach of fiduciary duty, and negligence.
 
 
 3
 In October 2001, in connection with its investigation of these investments, the OTS deposed five former employees of PaineWebber—Eddie Lee, Jeffrey Davis, Patrick Gallaway, Christina Li, and Mari Kawawa (collectively the "Former Employees")—who were actively involved in the creation and sale of the securities. Approximately six to nineteen months later, as part of the Hawaii action, ASB also deposed the Former Employees. It then attempted to obtain transcripts of their OTS testimony from the OTS pursuant to 12 C.F.R. § 510.5, which "applies to requests by the public for unpublished OTS information, such as requests for records or testimony from parties to lawsuits in which the OTS is not a party." 12 C.F.R. § 510.5(a)(1). Under section 510.5, one seeking testimony must demonstrate, inter alia, that the information sought is "highly relevant" to the purpose for which it is sought, that it is "not available from any other source," and that the need for the information "clearly outweighs" the need to maintain the confidentiality of the OTS information and the burden on the OTS to produce the information. 12 C.F.R. § 510.5(c)(1)(ii). In its request, ASB stated that a number of PaineWebber witnesses had claimed an inability to remember specifics of transactions, meetings, and other events relevant to the sale of the securities and that gaps existed in the records produced by PaineWebber. ABS contended that it, consequently, needed the transcripts because "the earliest testimony is often the best" and because "it is important to be sure that the record is complete." Letter from P. Alston to T. Segal (Mar. 14, 2002).
 
 
 4
 In August 2002, the OTS denied ASB's request without prejudice to its renewal, explaining that to be successful, ASB would have to identify the specific witnesses and the highly relevant matters each witness could not remember, demonstrate the high relevance of each such matter, and demonstrate that the need for the information clearly outweighed the need to maintain the confidentiality of the OTS information and the burden on the OTS to produce it. ASB then submitted a second request in May 2003, which the OTS granted in part and denied in part in August 2003, authorizing the release of five portions of the OTS transcripts. In September 2003, ASB submitted a third request, seeking additional portions of one of the Former Employee's transcripts. That request is still pending before the OTS.[1]
 
 
 5
 In addition to these efforts to obtain the transcripts from the OTS, ASB sought an order from the Hawaii district court compelling PaineWebber to direct the Former Employees to request copies of the transcripts under 12 C.F.R. § 512.4, which permits "[a] person who has submitted documentary evidence or given testimony in an investigative proceeding or formal examination proceeding [to] procure a copy of his own documentary evidence or transcript of his own testimony upon payment of the cost thereof." 12 C.F.R. § 512.4.[2] The court denied the request, finding that ASB had not demonstrated that PaineWebber had a right to request the OTS transcripts itself or that PaineWebber had retained control over the Former Employees sufficient to require them to request the transcripts.
 
 
 6
 ASB then sought to obtain the transcripts directly from the Former Employees by serving subpoenas on them, pursuant to Federal Rule of Civil Procedure 45, in the Southern District of New York, where they reside or work. The subpoenas instructed each of the Former Employees that their transcripts could be requested from the OTS and contained a form that could be used for this purpose. The Former Employees objected, stating that they did not have their transcripts and could not be compelled to request them from the OTS.
 
 
 7
 In January 2003, ASB moved to enforce the subpoenas in the Southern District of New York. After a hearing on March 11, 2003, the District Court observed that the use of a subpoena to obtain the OTS transcripts under 12 C.F.R. § 512.4 amounted to what it characterized as "an end run" around the requirement that ASB seek the transcripts directly from the OTS under 12 C.F.R. § 510.5. The Court also observed that one seeking to compel an individual to make a request he does not wish to make must show that the requester clearly is entitled to the information and that it is being improperly withheld. On this basis, the District Court concluded that it would consider enforcing the subpoenas only if the district court in Hawaii first found the transcripts to be essential and critical to ASB's case, and it directed the parties to seek guidance on that issue there.
 
 
 8
 In April 2003, the district court in Hawaii, after further considering the issue, concluded that the OTS transcripts were relevant to the claims and defenses raised by the parties and that Federal Rules of Civil Procedure 26 and 45 favored their production unless the witnesses could demonstrate undue burden or privilege. The court further noted that "agency regulations, however, must be complied with and exhausted before parties seek a court remedy." Order Concerning Clarification of Issues Related to OTS Deposition Transcripts at 2 (Apr. 11, 2003). ASB sought clarification of this final point, and the court responded:
 
 
 9
 Simply put, judicial economy and common sense dictate that a party cannot circumvent agency regulations by seeking court intervention before it has exhausted its administrative remedies. The Court could not determine, based on the parties' submissions, whether or not Plaintiff has exhausted its administrative remedies in seeking the transcripts directly from OTS. It is clear that Plaintiff has sought these transcripts from OTS pursuant to 12 C.F.R. § 510.5 and has been rebuffed, and that Plaintiff sought reconsideration of this refusal which was denied. What is not clear is whether agency regulations permit an appeal and, if so, whether Plaintiff has taken an appeal or any further action on its § 510.5 request.
 
 
 10
 Order Clarifying Order of 4/11/03 at 1 (Apr. 14, 2003) (emphasis in original).
 
 
 11
 The parties returned to the Southern District, and the District Court denied ASB's motion without a written opinion. ASB appealed.
 
 II
 
 12
 Before considering the District Court's denial of ASB's motion to enforce subpoenas, we first consider our jurisdiction. PaineWebber invokes the "prudential ripeness" doctrine, contending that we should dismiss this appeal as unripe because ASB has an application under section 510.5 pending before the OTS. We have recognized two forms of ripeness. See generally Simmonds v. INS, 326 F.3d 351, 356-57 (2d Cir.2003). The first, which is not relevant here, is rooted in the Case or Controversy Clause of Article III of the Constitution and thus implicates our jurisdiction as a constitutional matter. Id. at 357. The second—the "prudential ripeness" doctrine—which is at issue here, is "a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it":
 
 
 13
 [W]hen a court declares that a case is not prudentially ripe, it means that the case will be better decided later and that the parties will not have constitutional rights undermined by the delay. It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III. Of course, in deciding whether "better" means later, the court must consider the likelihood that some of the parties will be made worse off on account of the delay. But that, and its degree, is just one—albeit important—factor the court must consider. Prudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial.
 
 
 14
 Id. The test for determining whether to dismiss an appeal based on prudential ripeness involves two inquiries: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." Id. at 359. The focus of these two questions is whether the appellant's claims would be better heard now or at some future point. Id. Fitness "`is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur.'" Id. (quoting Isaacs v. Bowen, 865 F.2d 468, 478 (2d Cir.1989)). "[I]ssues have been deemed ripe when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." Id. Hardship, in turn, involves an evaluation of "`whether the challenged action creates a direct and immediate dilemma for the parties.'" Id. at 360 (quoting Marchi v. Bd. of Coop. Educ. Servs., 173 F.3d 469, 478 (2d Cir.1999)).
 
 
 15
 We find that the issues raised by this appeal are ill-suited for judicial resolution at this stage in the proceedings and that the parties will suffer no undue hardship by our withholding review at this time. As noted, ASB has filed several requests with the OTS under 7 C.F.R. § 510.5, the last of which currently is pending. The fact that ASB has not yet exhausted its administrative remedies counsels in favor of invoking the prudential ripeness doctrine. This approach would avoid both interference with ongoing administrative activity and prematurely addressing the novel issues of first impression raised in this appeal, such as the relationship between 7 C.F.R. § 510.5, 512.4 and Federal Rules of Civil Procedure 26 and 45, and whether ASB's attempted indirect use of section 512.4, undoubtedly because of the heightened requirements of directly seeking the release of transcripts pursuant to section 510.5, is permissible. Moreover, our review will only benefit by awaiting the OTS's views on these issues involving its own regulations. For these reasons and also because we conclude that neither party has demonstrated any hardship, let alone a deprivation of constitutional rights, were review withheld until ASB has exhausted its administrative remedies, we prudentially dismiss this appeal as unripe and remand the case to the District Court. See Simmonds, 326 F.3d at 356-57.[3]
 
 CONCLUSION
 
 16
 For the foregoing reasons, this appeal is dismissed as unripe, and the case is remanded to the District Court.
 
 
 
 Notes:
 
 
 [1]
 ASB also sought to obtain the transcripts under the Freedom of Information Act ("FOIA") in June 2002. But the OTS denied that request based on the law enforcement and regulatory report exemptions to FOIA
 
 
 [2]
 In contrast to the heightened requirements that a non-witness requestor must satisfy to obtain transcripts under 12 C.F.R. § 510.5, set forth above, the OTS may deny a witness's request for his own transcript only for "good cause" under 12 C.F.R. § 512.4
 
 
 [3]
 We review a district court's denial of a motion to enforce subpoenas for an abuse of discretion,In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir.2003) ("Motions to compel and motions to quash a subpoena are both `entrusted to the sound discretion of the district court.'") (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir.2000)), but we find the current record inadequate for such a review, largely because the District Court provided no explanation with its denial. Once administrative procedures are concluded (and we have no doubt that review will occur expeditiously) the District Court will have an opportunity to consider ASB's application on a complete record and at that point present its conclusions. These procedures will facilitate later appellate consideration if necessary.