12-753-cv
A.M. *ex rel.* McKay v. Taconic Hills Cent. Sch. Dist.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of January, two thousand thirteen.

PRESENT:   DENNY CHIN,
                    CHRISTOPHER F. DRONEY,
                                        *Circuit Judges*,
                    JOHN GLEESON,
                                        *District Judge.**

----------------------------------------------------------------------

A.M., a minor, by her Parent and Next Friend, JOANNE MCKAY,

                              *Plaintiff-Appellant*,

                    v.                                                    12-753-cv

TACONIC HILLS CENTRAL SCHOOL
DISTRICT,**

                              *Defendant-Appellees.*

----------------------------------------------------------------------

* The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

** The Clerk of the Court is respectfully directed to amend the caption to conform with the above.

FOR APPELLANT:      David C. Gibbs, III, Gibbs Law Firm, P.A., Seminole, FL (on submission).

FOR APPELLEES:      Patrick J. Fitzgerald and Scott P. Quesnel, Girvin & Ferlazzo, P.C., Albany, NY (on submission).

FOR AMICUS:         Ayesha N. Khan and Alex J. Luchenitser, Americans United for Separation of Church and State, Washington, DC, *for Americans United for Separation of Church and State as* amici curiae *in support of Appellees* (on submission).

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, *C.J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Plaintiff-Appellant A.M., by and through her mother, Joanne McKay, appeals from the January 23, 2012, decision and order of the district court granting summary judgment to Defendant-Appellee Taconic Hills Central School District (the "School District") on all claims.[1] On appeal, A.M. seeks declaratory relief and damages from the School District under 42 U.S.C. § 1983 to redress violations of A.M.'s rights under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the New York Constitution. We assume the parties' familiarity with the underlying facts and procedural history of this case, which we reference only as necessary to explain our decision to affirm.

**I.      Background**

The following facts, contained in the record on the Defendants' motion for summary judgment, are recounted in the light most favorable to A.M. They are undisputed unless otherwise indicated.

---

[1] The district court had previously granted a motion to dismiss with respect to Defendants Dr. Mark Sposato, in his official capacity as Superintendent of the School District, and Dr. Neil Howard, in his official capacity as Principal of Taconic Hills Middle School. *See* ECF No. 22.

Taconic Hills Middle School (the "Middle School") is part of the School District, which is a public school system organized under the laws of the State of New York. During the 2008-09 academic year, A.M. was a student in the eighth grade at the Middle School, and had been elected class co-president of the student council with fellow student A.S. By virtue of this position, both A.M. and A.S. were each permitted to deliver a "brief message" at the annual Moving-Up Ceremony (the "Ceremony"), which was scheduled for June 25, 2009, in the Middle School's auditorium.

Several days before the Ceremony, A.M. asked her English and Language Arts teacher, Jamie Keenan, to review her draft speech for "punctuation and grammar." Upon reading the speech, Keenan became concerned regarding the appropriateness of the final sentence in the speech, which read: "As we say our goodbyes and leave middle school behind, I say to you, may the LORD bless you and keep you; make His face shine upon you and be gracious to you; lift up His countenance upon you, and give you peace."[2] On June 24, 2009, Leanne Thornton, the faculty advisory of the student council, also reviewed the speech. Thornton expressed concerns similar to Keenan and recommended that Principal Neil Howard review the speech as well.[3] Howard then scheduled a meeting for the morning of June 25, 2009, with A.M. and A.S. to review their speeches for the Ceremony.[4]

---

[2] A.M. later described this language as a "blessing" and indicated that she was "taught to give blessings and it was good to receive blessings from God."

[3] The parties appear to dispute whether Principal Howard had a policy of reviewing the students' speeches for the Ceremony beforehand, or whether he only did so in this case because A.M.'s speech was brought to his attention and so instituted a policy of review only after the events in the instant case. However, the parties do not dispute that the Middle School's principals typically heard the students' speeches during a rehearsal the morning of the Ceremony. The parties also do not dispute that Keenan, Thornton, and Howard all reviewed A.M.'s speech in this case and shared concerns regarding its appropriateness for the Ceremony.

[4] Neither Keenan, Thornton, nor Howard knew the precise source of the language in the final sentence of A.M.'s speech, which is a quotation from verses 24-26 of chapter 6 of the Book of Numbers of the Old Testament.

At the meeting on June 25, after approving A.S.'s speech, Howard requested that A.M. remove the last sentence of her speech because it sounded "too religious" and because it could be perceived as an endorsement of one religion over another. A.M. refused to remove the lines and gave Howard pamphlets she and her mother had found on the internet describing the rights of public school students under the Free Speech Clause of the First Amendment. Howard then called A.M.'s mother, who objected to the removal of the language as well and requested that Howard speak with Superintendent Sposato. Howard spoke with Sposato and the School District's legal counsel, who agreed that allowing A.M. to deliver the speech as written could violate the Establishment Clause. Sposato then called A.M.'s mother and informed her that A.M. would not be permitted to speak at the Ceremony unless she removed the last sentence from her speech. A.M. and her mother agreed to comply with this request.

Later that evening at the Ceremony, A.M. delivered her speech without the final sentence. The Ceremony was entirely funded and insured by the School District, held in the Middle School's auditorium, and publicized on materials bearing the School District's letterhead.[5] The Ceremony also featured banners and signs decorated with the Middle School's mascot and insignia, and the students received "diplomas" signifying their ascent to high school. The Ceremony was attended by the students and their families, the Middle School's faculty, and various School District administrators.

Shortly after the Ceremony, A.M. commenced this suit alleging violations of her rights under the Free Speech Clause of the First Amendment of the United States Constitution and under Article I, Section 8 of the New York Constitution.[6] On January 25, 2011, the district court granted the Defendants' motion to dismiss with respect to Sposato

[5] A.M. argues that the student council runs the Ceremony, but otherwise concedes that the Middle School funds and generally organizes the Ceremony.

[6] A.M. cites to several Establishment Clause cases in her brief, but does not otherwise raise an Establishment Clause claim. In addition, the district court decided this case solely on Free Speech Clause grounds. We therefore restrict our analysis to the Free Speech Clause.

4

and Howard as duplicative of the claims against the School District, but denied the motion to dismiss with respect to the School District. On January 23, 2012, the district court granted the School District's motion for summary judgment.

**II.    Discussion**

   ***A.    Legal Standard***

This Court reviews *de novo* a district court's grant of summary judgment. *See, e.g.*, *Easterling v. Collecto, Inc.*, 692 F.3d 229, 232 (2d Cir. 2012). A grant of summary judgment should be affirmed "only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)). In making its determinations, the court deciding summary judgment should "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and alteration omitted).

   ***B.    Free Speech Claim***

To determine whether the Defendants abrogated A.M.'s free speech rights, it is necessary first to determine the appropriate governing standard. If A.M.'s address for the Ceremony constituted "school-sponsored expressive activities," then the standard is given by *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988). Under *Hazelwood*, educators may exercise editorial control over student speech "so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273. If, on the other hand, A.M.'s address constituted "a student's personal expression that happens to occur on the school premises," *id.* at 271, then the standard is given by *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). Under *Tinker*, school officials may exercise editorial control over student speech only if the speech at issue would "materially and substantially interfere with the requirements of appropriate

discipline in the operation of the school." *Tinker*, 393 U.S. at 509 (internal quotation marks omitted).[7]

We agree with the district court's determination as a matter of law that A.M.'s address for the Ceremony constituted "school-sponsored expressive activities" and that *Hazelwood* thus provides the governing standard.[8] Student speech constitutes a "school-sponsored expressive activity" if observers, such as "students, parents, and members of the public[,] might reasonably perceive [the speech] to bear the imprimatur of the school." *Morse v. Frederick*, 551 U.S. 393, 405 (2007) (quoting *Hazelwood*, 484 U.S. at 271). In the instant case, the Ceremony was set to occur "at a school-sponsored assembly, to take place in the school [auditorium], to which parents of the [students] were invited." *Peck* ex rel. *Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 629 (2d Cir. 2005). In addition, the School District funded and managed the Ceremony, and the Middle School's name and insignia appeared prominently on banners, signs, and programs prepared specifically for the Ceremony. *See R.O.* ex rel. *Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 541 (2d Cir. 2011). In light of the School District's involvement in directing the Ceremony and in reviewing the speeches before they were delivered, we believe as a matter of law that a reasonable observer would perceive A.M.'s speech as being endorsed by the

---

[7] The Supreme Court has also articulated two other standards governing restrictions on student speech not relevant to the instant case. *See Morse v. Frederick*, 551 U.S. 393 (2007) (addressing student speech that promotes illegal drug use); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) (addressing vulgar, lewd, obscene, or offensive student speech).

[8] The parties did not substantively address the question of the type of forum represented by the Middle School auditorium at the Ceremony. We nonetheless assume without deciding that the district court correctly accepted the School District's "conclusory assertion that the school auditorium was a non-public forum." *A.M.*, 2012 WL 177954, at *3 n.4. In a non-public forum, "[r]estrictions on speech . . . need only be reasonable and viewpoint neutral" to survive constitutional scrutiny. *Peck* ex rel. *Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 626 (2d Cir. 2005) (internal quotation marks omitted).

6

Middle School, and that *Hazelwood* thus provides the governing standard for determining the appropriateness of the Defendants' conduct.[9]

The operative question under *Hazelwood* is whether the Defendants' actions were "reasonably related to legitimate pedagogical concerns." 484 U.S. at 273. To determine whether the Defendants acted "reasonably," it is necessary to ascertain whether the Defendants' request that A.M. remove the final sentence of her speech constituted content-based or viewpoint-based restrictions on speech. Even under the deferential standard articulated in *Hazelwood*, viewpoint discrimination can only be justified by an "overriding" state interest. *Peck*, 426 F.3d at 633. Viewpoint discrimination occurs when the government seeks to regulate "speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). In the context of religious speech, viewpoint discrimination would include making a forum accessible to speakers expressing "all views about [secular] issues . . . except those dealing with the subject matter from a religious standpoint." *Id.* at 830 (quoting *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 393 (1993)).

By contrast, content discrimination entails the exclusion of a "general subject matter" from a forum, rather than a "prohibited perspective." *Bronx Household of Faith v. Bd. of Educ.*, 650 F.3d 30, 39 (2d Cir.) (quoting *Rosenberger*, 515 U.S. at 831), *cert. denied*, 132 S.Ct. 816 (2011). In the context of religious speech, content discrimination

---

[9] *See also Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1228 (10th Cir. 2009) ("[I]n order to determine whether challenged speech is school-sponsored and bears the imprimatur of the school, a reviewing court should appraise the level of involvement the school had in organizing or supervising the contested speech . . . ."); *Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979, 985 (9th Cir. 2003) ("The graduation ceremony was a school-sponsored function that all graduating seniors could be expected to attend."); *Brody* ex rel. *Sugzdinis v. Spang*, 957 F.2d 1108, 1119 (3d Cir. 1992) ("The process for setting the format and contents of a graduation ceremony are more likely to resemble the tightly controlled school newspaper policies at issue in *Hazelwood* . . . .").

would entail excluding speech for which "there is no real secular analogue." *Id.* at 38 (quoting *Bronx Household of Faith v. Cmty. Sch. Dist. No. 10*, 127 F.3d 207, 221 (2d Cir. 1997) (Cabranes, *J.*, concurring in part and dissenting in part)). Where the government engages in content-based discrimination in the context of school-sponsored speech, the "*Hazelwood* standard does not require that the [government-imposed restrictions] be the *most* reasonable or the *only* reasonable limitations, only that they be reasonable." *Peck*, 426 F.3d at 630 (internal quotation marks omitted); *see also Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 476 (2d Cir. 1999) ("[W]hen government endeavors to police itself and its employees in an effort to avoid transgressing Establishment Clause limits, it must be accorded some leeway, even though the conduct it forbids might not inevitably be determined to violate the Establishment Clause . . . .").

We believe that the final sentence in A.M.'s speech constituted purely religious speech and that the Defendants, in requesting that she remove it from her address, were thus engaged in content-based discrimination. The final sentence in A.M.'s speech consisted of a direct quotation from the Old Testament calling for a divine blessing of the audience, rather than a statement offering a religiously-informed viewpoint on an otherwise secular subject matter. *See Rosenberger*, 515 U.S. at 830; *see also Bronx Household*, 650 F.3d at 39 (noting that a public school may lawfully exclude "the conduct of a certain type of activity – the conduct of worship services – and not . . . the free expression of religious views associated with it"). Statements of this nature have "no real secular analogue." *Bronx Household*, 650 F.3d at 38 (internal quotation marks omitted).[10] Our understanding of A.M.'s speech is confirmed by her own characterization of the

---

[10] *Cf. Lee v. Weisman*, 505 U.S. 577, 603 (1992) (Blackmun, *J.*, concurring) ("There can be 'no doubt' that the 'invocation of God's blessings' . . . is a religious activity. In the words of *Engel*, the . . . prayer 'is a solemn avowal of divine faith and supplication for the blessings of the Almighty. The nature of such a prayer has always been religious.'" (quoting *Engel v. Vitale*, 370 U.S. 421, 424 (1962))).

8

sentence as a "blessing" motivated by her desire to deliver "blessings from God." *See id.* at 46 (examining the subjective intent of the speaker to determine the nature of the speech (citing *Christian Legal Soc'y v. Martinez*, 130 S.Ct. 2971, 2982-84 (2010)). We therefore conclude that the Defendants acted reasonably in requiring that A.M. remove the final sentence from her speech.

In addition to determining that the Defendants were engaged in content-based discrimination, we agree with the district court that the Defendants' desire to avoid violating the Establishment Clause represented a "legitimate pedagogical concern." "There is no doubt that compliance with the Establishment Clause is a state interest sufficiently compelling to justify content-based restrictions on speech." *Id.* at 40 (quoting *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 761-62 (1995) (plurality opinion)).[11] In the context of student speech, a "school must also retain the authority to refuse to sponsor student speech that might reasonably be perceived . . . to associate the school with any position other than neutrality on matters of political controversy." *Hazelwood*, 484 U.S. at 272 (internal citation omitted). As a result, we conclude that the Defendants were motivated by "legitimate pedagogical concerns" and that their actions thus complied with the *Hazelwood* standard. Accordingly, we affirm the district court's grant of summary judgment to the School District on A.M.'s free speech claim.

Because we affirm the district court's judgment with respect to A.M.'s federal cause of action, we correspondingly affirm the district court's dismissal of A.M.'s claim grounded in the New York State Constitution as an inappropriate exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c).

---

[11] *See also Corder*, 566 F.3d at 1228-29 (holding that so long as the *Hazelwood* test for whether speech bears a school's imprimatur is met, the "[legitimate] pedagogical [concern] test may be satisfied 'simply by the school district's desire to avoid controversy within a school environment'" (quoting *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 925-26 (10th Cir. 2002))); *Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004, 1008 (7th Cir. 1990) (finding a school board's "legitimate concern with possible establishment clause violations" to be a sufficient reason to prohibit "the teaching of creation science to junior high school students").

We have considered all of A.M.'s other arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court